## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2016, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jon A. Keyes
Allen Wellman McNew Harvey, LLP
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy J. Hughes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 18, 2016

Court of Appeals Case No.
30A01-1604-CR-956

Appeal from the Hancock Circuit Court

The Hon. Richard Culver, Judge

Trial Court Cause No.
30C01-1508-F5-1249

**Bradford, Judge.**

# Case Summary

[1] On August 11, 2015, Appellant-Defendant Timothy J. Hughes operated a vehicle while intoxicated. His vehicle struck two bicyclists, Carla McCloud and Amanda Wheeler. McCloud later died of her injuries sustained in the crash. Wheeler survived, but sustained a fractured skull and other injuries. On August 13, 2015, the State of Indiana ("the State") filed a delinquency petition alleging that Hughes had committed numerous offenses relating to his operation of the vehicle in question. On August 19, 2015, the State filed a motion for waiver of juvenile jurisdiction, and on the same day the court granted that waiver. Later that day, Hughes was formally charged as an adult for those same offenses in addition to two other charges.

[2] On February 9, 2016, Hughes pled guilty to all counts without the benefit of a plea agreement. The trial court accepted Hughes's guilty plea and sentenced him to an aggregate nine-and-a-half-year executed sentence. On March 9, 2016, Hughes filed a motion to correct error, which the trial court denied on April 11, 2016. On appeal, Hughes contends that his sentence is inappropriate in light of the nature of his offenses and his character. Concluding that Hughes's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[3] In March of 2015, Hughes entered into an informal adjustment for a delinquency alcohol violation. During that adjustment, Hughes participated in

a dual diagnosis program that was designed to address his mental health and substance-abuse issues. Less than a month after Hughes was released from supervision in that case, he quit working with his sponsor, quit attending meetings, and began to use alcohol multiple times a week, often to the point of passing out.

[4] On August 11, 2015, Hughes consumed a significant amount of alcohol and became highly intoxicated. Hughes then made the decision to drive home on the "back roads" in order to avoid contact with law enforcement. At approximately 9:05 p.m., Hughes's vehicle struck two bicyclists, McCloud and Wheeler. Hughes was so intoxicated at the time that he initially thought that he had hit a deer. It was not until Hughes saw McCloud lying in the ditch that he realized that he had hit a person. Hughes did not, however, see that he had hit Wheeler as well. Hughes remained at the scene of the crash and waited for law enforcement to arrive.

[5] Officers responding to the scene of the crash observed Hughes showing clear signs of impairment and subsequently conducted several field sobriety tests. Hughes failed every test he was offered. Inside Hughes's vehicle, the officers also found: a partially full 1.75L bottle of Gran Legacy Vodka, a partially full water bottle of clear liquid that smelled of alcohol, and one OxyContin pill that had been broken.

[6] Hughes was read Indiana's implied consent by the officers and voluntarily agreed to take a chemical test at Hancock Regional Hospital. The results of the

blood alcohol content test were 0.28 grams of alcohol per 100 milliliters of blood ("BAC"). Hughes was eight days shy of his eighteenth birthday at the time.

[7] McCloud was transported to the hospital via air ambulance due to the severity of her injuries where she died several days later. Wheeler sustained a fractured skull and numerous other injuries. As a result of those injuries, Wheeler had to delay entry into graduate school; lost her sense of smell; has great difficult reading and remembering information, suffers from daily migraines, has pain throughout her left side; and suffers from depression, post-traumatic stress disorder, and survivor's guilt necessitating the intervention of a therapist.

[8] After initially being charged in juvenile court then waived to adult court on August 19, 2015, the State charged Hughes with the following offenses: (1) Level 5 felony operating while intoxicated ("OWI"); (2) Level 6 felony operating a vehicle with a BAC above 0.08; (3) Level 6 felony OWI; (4) Level 6 felony operating a vehicle with a BAC above .08; (5) Level 5 felony reckless homicide; (6) Level 6 felony illegal possession of a narcotic drug; and (7) Class C misdemeanor possession of alcohol as a minor.

[9] At the initial hearing on August 19, 2015, the trial court set a cash bond in the amount of $20,000, subject to the conditions of GPS monitoring, SCRAM,[1] a

---

[1] SCRAM is a wireless alcohol monitoring system. The technology can either be used like a handheld breathalyzer or attached to the ankle like a GPS monitoring device. *Alcohol Monitoring*, SCRAM SYSTEMS,

drug and alcohol evaluation, that Hughes remain drug- and alcohol-free and that he submit to random drug screens. On August 31, 2015, after Hughes was released on bond, Hughes entered treatment at St. Vincent's Stress Center. He was referred to dual diagnosis treatment for a second time. On October 1, 2015, Hughes successfully completed the program.

[10] On October 23, 2015, community corrections reported to the trial court that Hughes had confessed to a field officer during a daily home visit and urine screen that he had inhaled the contents of a twelve-ounce can of Ultra Duster on the night of October 21, 2015 to help him sleep. In response to Hughes's actions, the trial court revoked his bond on November 4, 2015.

[11] On February 9, 2016, Hughes pled guilty to all charges without the benefit of a plea agreement. During the sentencing hearing, the trial court found that Hughes's guilty plea was a mitigating circumstance, but did not give it a "great amount of weight" because there was "overwhelming evidence" against Hughes and his plea was "not entirely based upon any heartfelt remorse." Tr. p. 197. The trial court further concluded that the following aggravating circumstances outweighed the mitigators: (1) Wheeler had a loss that was "greater than what was necessary to prove the elements of serious bodily injury[;]" (2) Hughes had a prior juvenile case; (3) "previous attempts at rehabilitating [Hughes], [his family's] efforts, . . . the probation department's

https://www.scramsystems.com/products/scram-continuous-alcohol-monitoring/ (last visited November 7, 2016).

efforts, . . . and the Court's efforts have failed[;]" (4) additional steps to control Hughes's destructive behavior, including the use of community corrections, "have not been sufficient and have failed to protect society[,]" and the court feared that Hughes could not be "safely rehabilitate[d] . . . outside the walls of a facility[;]" (5) before and after the crash, Hughes was "very selfish and without remorse as evidenced by the fact that [he was] huffing and being dishonest with [his] grandmother after [the court] gave [him] a chance at freedom and rehabilitation[;]" and (6) Hughes was engaged in "old fashion criminal thinking" and his desire to protect the names of his friends. Tr. pp. 197-02. After considering the mitigating and aggravating factors, the trial court concluded that the "only appropriate penalty [was] the maximum sentence allowed by law." Tr. p. 202. After the presentation of evidence and argument by the parties, Hughes was sentenced to nine-and-a-half years of incarceration by the trial court.

# Discussion and Decision

[12]    The sole issue for our review is whether Hughes's maximum sentence allowed by law is appropriate in light of the nature of his offenses and character. Under Indiana Appellate Rule 7(B), "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing such claims, we "concentrate less on comparing the facts of the [case at issue] to others, whether real or

hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentence, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotes and citations omitted). Hughes, as the defendant, bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[13] With respect to the nature of the offense, the trial court found that Wheeler suffered a loss that was "greater than what was necessary to prove the elements of serious bodily injury." Tr. p.198. As it relates to McCloud, the court found that she already "suffered the ultimate penalty" and it is impossible to say that her death is any less bad than another death caused by a drunk driver. Tr. p. 198. Hughes chose to get behind the wheel of his vehicle on August 11, 2015, after having consumed a large amount of alcohol. He also admitted that he initially thought he had hit a deer. The record shows that after Hughes exited the vehicle, he only saw McCloud lying in the ditch and was unaware that he had also struck Wheeler. Furthermore, the evidence shows that following the crash, Hughes's BAC was 0.28, over three times the legal limit. Wheeler lost her best friend and cousin McCloud on the day of the accident. The evidence also shows that Wheeler has and continues to suffer from lingering physical, emotional, and cognitive deficits as a result of the crash. We do not agree with Hughes's argument that in light of the nature of his offense, his sentence is inappropriate.

Hughes also argues that that his youth, remorse, guilty plea, and the fact that he sought mental-health and substance-abuse treatment after the crash should weigh in his favor. The record reveals that the trial court considered Hughes's guilty plea but found that his "guilty plea was in part a result of the overwhelming evidence against [him] and not entirely based upon any heartfelt remorse." Tr. p. 197. Moreover, the trial court found that despite previous attempts to rehabilitate him, Hughes continued to engage in self-destructive behavior and went so far as to lie to his grandmother in order to get high just days after being released from treatment and weeks after the crash.

Finally, the fact that Hughes was several days shy of his eighteenth birthday at the time of the offense does not mean the trial court erred when it treated Hughes the same as an adult for sentencing purposes. While the youth of a defender is a factor a sentencing court may consider, age is not automatically a significant mitigating factor. *Gross v. State*, 769 N.E.2d 1136, 1141 n.4 (Ind. 2002). We are unconvinced that Hughes's character is sufficient to render his sentence inappropriate.

Hughes also points to his lack of criminal history as an indication that his sentence is inappropriate. While it appears that, other than the informal adjustment for a delinquency alcohol violation, Hughes has not previously been arrested or convicted of any prior criminal or delinquent acts, we believe that his lack of criminal and delinquent history is offset by the seriousness of the present offenses. Hughes has failed to establish that his nine-and-a-half-year

executed sentence is inappropriate in light of both his character and the nature of his offenses.

[17]     We affirm the trial court's judgment.


Pyle, J., and Altice, J., concur.